# BALTIMORE CITY COURT.

Filed April 9, 1913.

ARTHUR GEORGE BROWN, TRUSTEE,
VS.
MAYOR AND CITY COUNCIL OF BALTIMORE.

*Joseph S. Goldsmith, Sylvan Hayes Lauchheimer* and *German H. H. Emory* for plaintiff.

*S. S. Field*, City Solicitor, for defendant.

DUFFY, J.—

By the Act of 1910, chapter 110, section 1, it is provided that the Mayor and City Council be, and it is hereby, authorized and empowered to open, construct and establish a public highway along, adjoining or over Jones Falls and to acquire property for said purposes in the bed of said highway and adjacent thereto.

By section 2 it is provided that before proceeding to open and construct said highway the Mayor and City Council and shall by ordinance provide therefor, and there shall be designated upon a proper plat the property that is to be acquired in, along or adjacent to said highway.

All persons have constructive notice of this statute. The plaintiffs, therefore, were charged with notice that at some time thereafter the city might proceed to act by passing the ordinance and preparing the plat therein re-

quired. The city did prepare the plat showing accurately the territorial limitations of this highway. An ordinance describing accurately the land in the bed of the highway was passed and approved February 9th, 1912, known as No. 70. This ordinance also provided that the work should be done by the Commissioners for Opening Streets in accordance with the provisions of the Charter applicable thereto. The Commissioners for Opening Streets did so proceed, giving the public notices and complying with all of the provisions of those sections of the Charter which enumerate and define their duties and powers.

It is contended that this ordinance is void because no preliminary public notice of its introduction and passage by the Council was given. Was such notice necessary? The ordinance recites that it was passed pursuant to the authority vested in the Mayor and City Council by the Act of 1910, chapter 110. It is not contended that such notice is necessary in the absence of statutory requirement, but it is claimed that, notwithstanding the fact that the Act of 1910, chapter 110, is silent as to such notice, still that such notice is required by section 828 of the Charter. The Act of 1910, chapter 110, provides for a special ordinance to make the improvement described in the Act and for no other; section 828 is a part of the scheme provided by the Charter for opening streets in the City of Baltimore. This scheme does not contemplate the passage of such an Act as that of 1910, chapter 110; section 828 provides that before the passage of an ordinance under section 6, paragraph "Streets, Bridges and Highways"—the notice therein specified shall be given. This paragraph contains some of the general powers conferred on the municipal corporation. Among them is this one: To provide for laying out, opening, extending, &c., any street, square, lane or alley within the bounds of the city, which in its opinion the public welfare or convenience may require. It is no doubt wise to provide that before such broad and general power as this shall be exercised by the municipal corporation to initiate a street opening, it shall give public notice that application will be made for the passing of such an ordinance; but it does not follow from this that when a special Act of the legislature is passed authorizing the passage

of an ordinance for the opening of a highway mentioned in the Act, that such notice is necessary or intended by the legislature.

Sections 172 to 195 first appear as legislative enactments in the City Charter passed in 1898; they are substantially the ordinance of the Mayor and City Council embodied in the City Code, 1892, article 48, sections 1-27. See note, City Code, 1906, section 189. Section 175 commences:

"Whenever the Mayor and City Council of Baltimore shall hereafter by ordinance direct the Commissioners for Opening Streets to lay out, &c., any streets, &c.," they shall proceed as thereafter stated. This section has equal force as law with every other section of the Charter not inconsistent therewith.

As the ordinance No. 70 was passed pursuant to Act of 1910 chapter 110, and no such preliminary notice was required by that Act, I conclude that no such notice was necessary that application would be made for the passage of this ordinance.

By section 175 of the Charter when the Commissioners for Opening Streets proceed to act, they shall ascertain the total amount of the damages and add thereto an estimate of their probable expenses incurred in the performance of their duties, and also the expenses of the City Register by reason of the proceedings.

The Commissioners in their final return in this proceeding, on page 345 of the Condemnation Book, awarded damages as $128,616.98 and expenses $306,326.91, making a total of $434,943.89. Included among the expenses will be found the following items: Expenses of Commission on City Plan, $6,108.75; estimated cost of viaduct, $225,000; estimated cost of grading, $68,000. Section 175 does not authorize these expenses to be included in the damages and expenses. There is nothing in this proceeding to show that the Commissioners on City Plan incurred these expenses in performing services for the Commissioners for Opening Streets. The viaduct is a bridge and will be constructed by the City Engineer, the grading also will be done by him and the cost of these two parts of the work will be defrayed out of the $1,000,000 loan, as provided by ordinance No. 106, approved May 23, 1912. These three items should be

stricken from the final return of the Commissioners.

By the final return of the Commissioners, the total damages and expenses are equal to the total benefits. (See book, pp. 345 and 501.) After the above items are stricken out, the benefits will exceed the damages and expenses by $299,108.75. Can the city assess benefits in excess of the total damages and expenses the Commissioners are authorized to award by Section 175?

Testimony of the Commissioners has been offered tending to show that they did not make the assessment of benefits to the extent of the damages and expenses, but that they determined in each case the sum which in their opinion the piece of property was actually benefited and charged that sum against the owner as the benefit accruing to his piece of property from the improvement. Objection was made to this testimony on the ground that it comes within the rule laid down in 105 Md. 10, Baltimore City vs. State, that a witness should not be allowed to contradict as a witness what he has officially certified. But this rule does not apply to street appeals. Section 179 provides that on these appeals the Court "may permit and require all such explanations, amendments and additions to be made to and of said record of the proceedings as the Court may deem requisite." This I deem to be sufficient authority to make the testimony of the Commissioners in the proceeding admissible.

This brings me to the final proposition, as to what is the rule of law in this State in determining the amount of benefits to be charged for improvements like the one in this case. This is correctly stated in Ritchie on Municipal Condemnation, section 131: "The enhanced value of the property is the true standard by which to measure benefits. If the value is enhanced benefits are assessed accordingly, even though the proposed improvement may not make the property more value to use."

This principle is clearly established by 74 Md. 116, Friedenwald vs. City; 33 Md. 270, Hawley vs. City.

I, therefore, conclude that the Commissioners for Opening Streets have power to assess aggregate benefits in excess of the amount awarded by them for damages and expenses.

The motion to quash will be overruled.

The Commissioners will strike from the list of expenses the three items above mentioned and make the appropriate change in the total on page 345.

And it is so ordered.